IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN E. RUIZ,

    Plaintiff,

v.                                                                              CIV 02-729 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff John Ruiz was born in 1946 and worked at various jobs as a plant operator, laboratory technician, pipe fitter, flagman, janitor, and gardener/landscaper until December 1997, when he was laid off because his employer failed to secure a contract and moved elsewhere. Ruiz did not look for work after being laid off and filed for benefits in January 1998, claiming that he became disabled when he was laid off due to knee and breathing problems. Plaintiff has a high school education and suffers from dyslexia that makes it difficult to read and interpret written instructions. Nevertheless, he was able to work as a lab technician for Penzoil for many years, learning the job by reading the book he was given about chemicals, consulting the log book, asking questions of other operators, and watching how the job was performed. *E.g.*, *Administrative Record* ("*Record*") at 16, 21, 35-40, 59, 93-97, 100, 105-08, 131, 133, 212.

Administrative Law Judge ("ALJ") William F. Nail, Jr. found that Plaintiff has the residual functional capacity ("RFC") to perform light work with the limitations that the work be non-public due to his depression and anxiety, and that Plaintiff be able to alternate sitting and standing.

*See id.* at 19-20, 22.  The ALJ elicited the testimony from a vocational expert, who identified two factory-type jobs Plaintiff can perform with these limitations and with an additional limitation that Plaintiff be permitted to use the restroom twice an hour.  The expert testified that these jobs – small parts assembler and machine operator – exist in significant numbers in the national and local economies.  *See id.* at 21, 62-64.  Based on the vocational expert's testimony, ALJ Nail found Plaintiff not disabled at Step 5 under the framework of the Medical Vocational Guidelines or "Grids."  *Id.* at 21, 22.  After considering additional medical evidence, the Appeals Council declined review on April 25, 2002, thereby rendering the ALJ's decision final.  *Id.* at 9-10, 281-325.

This matter is before the Court on Plaintiff's motion to reverse or remand, where he asserts that the ALJ committed error in his Step 5 analysis.  *Doc. 16.*  Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment.  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief.  *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992).  My assessment is based on a review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency.  *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991).

The record and the parties' briefs have been read and carefully considered.  Save for one argument, I will incorporate Defendant's rationale as stated in its Response and agree that Plaintiff's arguments are unavailing.  Because Plaintiff raises additional arguments in his Reply to which Respondent has not had an opportunity to brief, I add the following observations and

rulings.

As best I can discern, counsel appears to argue that Plaintiff should have been found disabled under the Grids for either sedentary or light work because his dyslexia renders him "illiterate" and his prior skilled work is not transferrable.[1]  However, Plaintiff takes no issue with the ALJ's finding that he can physically engage in light work, so only Table 2 of the Grids is arguably applicable.  Plaintiff also does not contest the testimony that his prior work as a laboratory technician and pipefitter was skilled and semi-skilled, and that those skills are not transferrable.  *See Record* at 60, 62.  Moreover, Plaintiff testified that he completed twelfth grade and, although his dyslexia adversely effects his ability to read, it does not entirely preclude reading or writing, nor preclude his ability to learn a job.  *See Record* at 37, 47, 57-59, 62.  Under the regulations then, at best, Plaintiff qualifies as having a limited education.  *See* 20 C.F.R. § 404.1564 (B)(3).  Even with a limited education and closely approaching advanced age and skilled past work that is not transferrable, Plaintiff does not qualify as disabled under the Grids for light work.  *See Grid* §202.11.

The preceding discussion is academic in any event, because Plaintiff has nonexertional limitations, so the Grids cannot be applied conclusively in his situation anyway.  Indeed, that is the

---

[1] *See Doc. 19* at 5 (Plaintiff argues that he is disabled, "[p]ursuant to SSA regulations and guidelines 201.00(g) and 202.00(d)."  These citations are to the explanatory regulations accompanying the Grids for sedentary and light residual functional capacities); *see also Doc. 17* at 10 ("The Medical Vocational Guidelines pursuant to 20 C.F.R. Pt. 404.202.00(d) provide that for one who can no longer perform his vocationally relevant past work and who has a history of unskilled work, or who only has skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within his functional capacity, and who is closely approaching advanced age (50-54), and his vocational scope is further significantly limited by illiteracy (in this case dyslexia), a finding of disabled is warranted.  A correct assessment of the Plaintiff's ability to perform other light work must be made pursuant to these regulations and guidelines.").

analysis ALJ Nail employed in Plaintiff's case, calling a vocational expert to provide testimony about the types and numbers of jobs Plaintiff could perform with his limitations.

In this regard, Ruiz apparently posits that because he performed skilled labor in the past, Plaintiff cannot be found capable of performing unskilled labor, regardless of whether he is illiterate or not. In other words, if a person has prior skilled job experience, then the ALJ must identify other skilled work in sufficient numbers in the economy to find the person not disabled under the framework of the Grids. He cites *Dollar v. Bowen,* 821 F.2d 530 (10th Cir. 1987) and *Ragland v. Shalala,* 992 F.2d 1056 (10th Cir. 1993) in support of this contention. *See Doc. 17* at 10; *Doc. 19* at 1, 4.

Neither of these decisions, however, stand for that proposition,[2] and like Defendant, I have been unable to find any authority that supports Plaintiff's view. To the contrary, after determining that a claimant cannot perform past relevant work, the purpose of the Step 5 inquiry is to determine whether the claimant can do some "other" work. *E.g.,* 20 C.F.R. § 404.1520 (a)(4)(v) ("At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled."); 20

---

[2] In *Dollar,* the vocational expert testified that the skills from prior work were transferrable to proposed unskilled work and the ALJ adopted that testimony. *Dollar,* 821 F.2d at 535 ("Accepting the testimony of the occupational expert, the ALJ determined that Mr. Dollar's skills were transferable to various light work categories such as those mentioned by the occupational expert."). The two were mistaken, however, because they "assumed that skills are considered transferable if the worker can shift from skilled to unskilled labor." *Id.* at 536. To the contrary, the applicable regulations "specifically provide that skills are considered transferable only when they 'can be used to meet the requirements of skilled or semi-skilled work activities of other jobs.'" *Id.* Here, the vocational expert and ALJ did not reach this mistaken conclusion because the testimony revealed that Plaintiff's skills were not transferrable. *Ragland* does not speak to the issue of transferability.

4

C.F.R. § 416.920 (a)(4)(v) (same).

Plaintiff also takes issue with the fact that while testifying about "machine operator" positions, by which the vocational excpert meant "factory work again, it's a grinder, all kinds of things," she actually cited the Dictionary of Occupational Titles number for "sewing machine operator, DOT 787.682-046. *Record* at 62-63. As such, Plaintiff contends that the machine operator positions cannot be considered as potential jobs. *See Doc. 17* at 10.

Defendant argues that citation to the sewing machine operator number was a mistake because the vocational expert was plainly testifying about "grinder" machine operators in factory settings and there are many DOT classifications for light, unskilled factory-type grinding jobs. Defendant further argues: "There is no requirement that the VE state the specific DOT number of any enumerated job, and this sampling of jobs listed in the DOT is consistent with VE's testimony as a whole. The VE's testimony clearly shows that Plaintiff can perform unskilled, factory type grindings jobs." *Doc. 18* at 5.

The ALJ did rely in part on the vocational expert's testimony about machine operator positions existing in sufficient numbers. *Record* at 21. The record, however, does not contain an explanation whether the 1.5 million and 18,000 jobs the ALJ relied upon represents sewing operator positions or machine grinder operator positions. In the Tenth Circuit, the ALJ is responsible for clarifying such discrepancies and failure to do so is reversible error. *See Haddock v. Apfel,* 196 F.3d 1084, 1087-89 (10th Cir. 1999).

Nevertheless, in the context of this case, the error does not warrant remand because the vocational expert also testified that the assembly work jobs existed in sufficient numbers and ALJ Nail relied on this testimony as well. Plaintiff argues that because he has an alternate sit and stand

5

limitation, Social Security Ruling 83-12 requires that the assembler position also be eliminated altogether. By its terms, however, the ruling does not require automatic elimination of unskilled factory positions as possible other work when a claimant has an alternate sit and stand limitation. The ruling simply says that the presence of that limitation presents a "special situation" where a vocational expert should ordinarily be called to determine if work exists in sufficient numbers given the limitations:

> Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of work as defined in sections 404.1567 and 416.967 of the regulations, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. . . .
>
> Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource. . . .
>
> * * * * *
>
> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. ***Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.***

*Social Security Ruling 83-12,* 1983 WL 31253 at *2, *4 (1983) (emphasis added).

Furthermore, Tenth Circuit authority does not require automatic exclusion. Indeed, the Tenth Circuit has rejected the exact same argument as legally frivolous:

> Plaintiff's first argument is based on an incomplete reading of Social

6

> Security Ruling 83-12 and is legally frivolous.  Plaintiff contends that, given her need to alternate periods of sitting and standing, none of the jobs identified by the VE constitute substantial evidence supporting a conclusion of no disability, because none of those jobs were managerial or professional, and most of them were unskilled. In support of this contention, plaintiff cites to the statement in Social Security Ruling 82-13 that, while professional and managerial jobs often permit a person to alternate between sitting and standing, most jobs require a person to be in a certain place or posture for a certain length of time, and "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." . . .
>
> Plaintiff neglects, however, to mention the very next sentence in the ruling, which states:  "In cases of unusual limitation of ability to sit or stand, a VS [vocational specialist] should be consulted to clarify the implications for the occupational base." . . .  As this is precisely the procedure the ALJ followed here, there was no legal error.

*Soliz v. Chater,* 82 F.3d 373, 375 (10th Cir. 1996) (citations omitted).

      Here, ALJ followed the correct procedure by calling a vocational expert and that expert specifically testified that the assembly jobs existed even with Plaintiff's sit/stand requirement and that ***none*** of the assembly positions would be eliminated by Plaintiff's need to use the restroom frequently.  *See Record* at 61-63.  There is no argument that those positions exist in sufficient numbers.

      Plaintiff's final argument is equally specious.  At the time of the hearing, Plaintiff was working with the Division of Vocational Rehabilitation, which considered him employable.  In the reply, counsel argues that Plaintiff is entitled to benefits under 20 C.F.R. § 404.1586(g) because the Division had not released him from its services at the time of the ALJ held the hearing and issued his decision.  *See Doc. 19* at 5.  However, § 404.1586 applies to persons who have become entitled to benefits because they are blind and the subpart Plaintiff cites concerns one of the

7

several specified situations that qualify for "why and when [the Administration] will stop [the blind person's] benefits." Plaintiff wears glasses for certain things, such as to drive, and otherwise makes no argument that he is blind. *See Record* at 36, 44-45.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion *(Doc. 16)* is DENIED, and the decision of the Commissioner is affirmed. A final order will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.